# Carroll *versus* Burns.

1. A testatrix devised real estate unto her " three daughters, to have and to hold to them during their natural lives, and after their death then to the lawful issue of her said three daughters and the heirs and assigns of such issue :"
   *Held,* that the devise was within the operation of the rule in Shelley's Case, and definitely vested in the daughters an estate-tail, which was converted into an estate in fee simple by virtue of the Act of April 27th, 1855, (P. L., 368.)

2. Technical words, or words of a definite meaning in a will, must be construed according to their legal or definite effect, unless from other inconsistent words in the will it be clear that the testator intended to use them in some other definite sense.

3. The rule is unquestioned that prima facie in a will, the word " issue" means " heirs of the body," and will be construed as a word of limitation, unless there be explanatory words showing it was used in a restricted sense.

4. The clause, to the " issue of my said three daughters and the heirs and assigns of such issue," is the equivalent for " issue and their heirs and assigns."

5. Robins *v.* Quinliven, 79 Pa. St., 333, explained and distinguished.

April 9th, 1884. Re-argument, January 21st, 1885. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

Error to the Court of Common Pleas No. 1 of *Philadelphia county :* Of January Term, 1884, No. 307.

Case stated, wherein T. J. Carroll. was plaintiff and Mary Burns defendant, in the nature of a special verdict, as follows :—

Jane Brooks, of the City of Philadelphia, widow, died seised in fee of premises No. 939 Suffolk street, Philadelphia. By her last will, dated June 11th, 1861, and duly proved June 19th, 1861, said Jane Brooks provided, inter alia, as follows :—

" All the rest, residue, and remainder of my estate, real and personal, I devise and bequeath unto my said three daughters, to have and to hold to them during their natural lives, and after their death then to the lawful issue of my said three daughters and the heirs and assigns of such issue."

Two of those daughters conveyed to the third, Martha J., wife of John E. Antrim, their two thirds, in fee, in No. 939 Suffolk street, and by sundry mense conveyances the title of Mrs. Antrim became vested in the plaintiff, who, by memorandum in writing, dated July 12th, 1882, agreed to sell said

premises to the defendant for the price of five hundred dollars cash and five hundred dollars on ground rent, otherwise to be clear of all incumbrances.

A deed was tendered by the plaintiff, which the defendant refused to accept, on the ground that the title of Mrs. Antrim, now vested in the plaintiff, was not a good and marketable title in fee.

If the court was of opinion that the plaintiff had a good and marketable title in fee, then judgment to be entered for the plaintiff for the amount of the purchase money, but if not, then judgment to be entered for the defendant.

Judgment was entered for defendant on the case stated, PEIRCE, J., delivering an oral opinion (14 W. N. C., 272). The plaintiff thereupon took this writ, assigning for error the said judgment for defendant.

On April 9th, 1884, the case was submitted on paper books, without oral argument.

April 21st, 1884. PER CURIAM. We have no doubt that the testatrix meant children when she used the word issue. Considering the whole paragraph in which it is used, we cannot arrive at any other conclusion. The clear intent of the textatrix was to give to each of her daughters a life estate only, and on their death to give to their children and their heirs the estate in fee. The language used was therefore a word of purchase. Hence they took the remainder as purchasers, and not by descent. Robins et al. *v.* Quinliven (29 P. F. S., 333) rules this case. This rule of property is too well settled in Pennsylvania to admit of its being disturbed.

Judgment affirmed.

On June 9th, 1884, an application for a re-argument was granted, which was had January 21st, 1885.

*Joseph P. Gross*, for plaintiff in error.—This devise is within the operation of the rule in Shelley's case, whereby the daughters took an estate tail, which was converted into an estate in fee simple by virtue of the Act of 27th April, 1855. The rule always applies where there is, first, an estate of freehold in the ancestor, and secondly, a limitation by way of remainder of the inheritance to his " heirs," or " the heirs of his body," by that description, or by any substituted term apparently designed to comprehend the whole line of the ancestor's inheritable succession: Abel's Case, Maynard, 18 Edw. II., folio 577 ; Hayes on Estates Tail, xlix. 3, 93; Smith's Executory Interest, 209, § 401; Coke upon Littleton, 319 *b*, 376 *b* ; Hileman *v.* Bouslaugh, 1 Har. 344, 355.

The first branch of this devise, to daughters for life, is a

[Carroll *v.* Burns.]

limitation of an estate of freehold to them; and the second branch, then to their issue and the heirs and assigns of such issue, is a limitation of the inheritance by way of remainder to their "heirs of the body."

It is immaterial that the remainder is to the "issue" of the ancestors. In a will, "issue," prima facie, means "heirs of the body," and is *ex vi termini* descriptive of all the issue of every generation to come, and is a word of limitation: Perrin *v.* Blake, Hargrave's Collectanea Juridica, 315, and cases there cited; Robinson *v.* Robinson, 1 Burr., 38; Lees *v.* Mosley, 1 Y. & Col. Ex. Cas., 589, and cases there cited; Sibley *v.* Perry, 7 Ves., 522, per Lord ELDON, and cases there cited; Leigh *v.* Norbury, 13 Id., 340, per Sir W. GRANT, M. R.; Robins *v.* Quinliven, 29 Sm., 335, and cases there cited. "Issue" will not be restrained from its *nomen collectivum* signification to a mere designation of a particular degree or class of issue, as "children," and converted into a word of purchase without a clear and unequivocal expressed intent that its technical import shall not prevail: Lees *v.* Mosley, *supra*; Jesson *v.* Wright, 2 Bligh, 55; Gallini *v.* Gallini, 5 B. & A., 640; Poole *v.* Poole, 3 Bos. & P., 620; Doe *v.* Harvey, 4 B. & C., 610.

The legal or definite effect of the gift to the "issue" is not controlled by the appended words, "and the heirs and assigns of such issue," as is shown by the following cases:—

"And the heirs male of the body of such issue male": Roe *v.* Grew, 2 Wils., 322; see also, Shaw *v.* Weigh, 1 Cas. in Eq. Ab., 184, pl. 28.

"And to the heirs and assigns of such issue male forever": Denn *v.* Puckey, 5 Term Reports, 299.

"And to the heirs of the body of such issue": Hodgson *v.* Merest, 9 Price, 566.

"And to the heirs of such issue forever": Franklin *v.* Lay, 2 Bligh. Parl. R., 59, n.

"Their heirs and assigns forever": Paxson *v.* Lefferts, 3 Rawle, 59, per KENNEDY, J.; see Kleppner *v.* Laverty, 20 Sm. 70, 73, explanation by SHARSWOOD, J.

"And to their heirs": King *v.* Burchell, 1 Eden, 424; Amb. 379; Frank *v.* Stovin, 3 East, 548, per Lord ELLENBOROUGH.

"Issue" can be cut down to its abnormal or restricted sense so as to exclude the rule in Shelley's case under the following circumstances only:—

Where the superadded words of limitation alter or narrow the course of descent: Hamilton *v.* West, 10 Irish Eq. Rep., 75; Dodds *v.* Dodds, 10 Irish Ch., 476; Archer' Case, 1 Coke, 66, *a*; Gross on Rule in Shelley's case in Pa., Table vii.

Where they are followed in a context in which the testator

[Carroll v. Burns.]

translates his own language and shows his intent to use "issue" as meaning "children": Morgan v. Thomas, 9 Queen's Bench Div. 643; Walker v. Milligan, 9 Wr., 179.

Where superadded words of limitation in fee and of distribution are together engrafted on the gift to the "issue": Abbott v. Jenkins, 10 S. & R., 296; Powell v. Domestic Missions, 13 Wr. 47; Robins v. Quinliven, 29 Sm., 333, and authorities there cited; Montgomery v. Montgomery, 3 J. & Lat. 47, 57; Crozier v. Crozier, 3 D. & War., 373; Colclough v. Colclough, Irish R., 4 Eq., 263; Bradley v. Cartwright, L. R. 2, C. P. 511.

The case of Robins v. Quinliven, 29 Sm., 333, relied upon by the court below and the Supreme Court, does not rule this case. Contrast the limitations of the two cases.

| CARROLL v. BURNS. | ROBINS v. QUINLIVEN. |
|---|---|
| (1) "unto my said three "daughters, to have and to "hold to them during their "natural lives, | (1) "unto my daughter for "and during her natural life, |
| (2) "and after their death "then to the lawful issue of "my said three daughters | (2) "and after her death to "her issue |
| (3) "and the heirs and assigns "of such issue." | (3) "and their heirs for- "ever, |
| | (4) "in the proportions to "which they would be enti- "tled under the intestate "laws of Pennsylvania respec- "tively, and free, clear, and "discharged from any or any. "future husband." |

It is obvious that the controlling distinction between the foregoing devises is that in Carroll v. Burns words of limitation in fee alone are appended to the gift to the issue, while in Robins v. Quinliven words of limitation in fee and of distributive modification together are superadded to the limitation of the inheritance. It is admitted that in the latter case the device was not within the scope of the rule. The opinion of WILLIAMS, J., shows that it was not invoked because the engrafting of words of limitation in fee and of distribution on the gift to the issue, indicated clearly and unequivocally the intention of the testator to use the term "issue" as a word of purchase, meaning children or descendants living at the death of the first taker, and thereby preventing the force of the rule. The two cases are therefore clearly distinguishable.

[Carroll *v.* Burns.]

As to the intention of the testatrix. Does she, by the language used in expressing her complete bounty, say that her daughters should take a life estate only, and that their lawful issue should take the remainder as purchasers in fee, and not as heirs by descent from their mother? If so, the devise repels the application of the rule. Or does she mean that her daughters should have the enjoyment of the estate during life; and subject thereto, that the estate should descend to all their descendants according to the rules of law? If so, the devise irresistibly invites the operation of the rule.

It may be probable that the testatrix intended to give her daughters a life estate only, and on their death to give to their children or issue then living the estate in fee simple. But has she unequivocally and with certainty expressed such an intent in language which according to the legal canons of construction shows such a meaning? Has she not employed words which under the rules of construction indicate an intention to create species of limitations which fall within the scope of the rule in Shelley's case? She has devised a freehold for the life of the first takers with a limitation of the remainder to their issue, which issue not only include their ancestor's immediate issue, but also their remote and most remote, born and to be born.

This result is in accordance with the primary or paramount (general) intent of the testatrix, founded in the most vehement presumption, that the "issue" should take *qua* heirs, and not as a root of the new succession. The secondary or minor (particular) intent that the daughters should have but a life estate, and that their issue should take the remainder as purchasers, gives way to the general intent: Smith's Executory Int., 216, § 429; 219, § 436; 253, § 523; 254, § 526; Fearne's Contingent Rem., 200; James's Claim, 1 Dal., 47; Carter *v.* McMichael, 10 S. & R., 430; Paxson *v.* Lefferts, 3 R., 59; Hileman *v.* Bouslaugh, 1 Har. 344, 351; Kleppner *v.* Laverty, 20 Sm., 70, 72; Huber's Appeal, 30 Id., 348, 356. She may not have meant to give them an estate tail, or to apply the rule. But she used words which in law mean nothing else. If she intended to bestow but an estate for life, *voluit non dixit;* technical words must have their legal effect whatever the testatrix may have intended: Bender *v.* Fleurie, 2 Gr., 345, 347; Philada.'s Co.'s Apl., 12 N., 209, 214; Doebler's Appl., 14 Sm., 9, 15; Hileman *v.* Bouslaugh, supra; Hayes on Estates Tail, 96. The superadded words in fee engrafted on the word of procreation, "issue," do not operate to break or change the ordinary course of descent pointed out by the preceding words of limitation. They amount to a mere repetition of the former branch of the gift. *Expressio eorum quæ tacite*

*insunt nihil operatur :* Smith's Executory Int., 252, § 516 ; Hargrave's Law Tracts, 504 ; Fearne's Contingent Rem., 181 ; Preston's Estates, \*347.

It follows that "issue" is used as a word of limitation of the estate, and the device is within the operation of the rule in Shelley's Case conferring upon the daughters an estate tail in possession, their life estate merging in their estate tail, which, by virtue of the Act of 1855, is converted into an estate in fee simple.

*Hampton L. Carson* (with him *William A. Redding* and *J. Levering Jones*), for defendant in error.—The intention of the testatrix must be first ascertained without the aid of the rule in Shelley's Case, which operates only on the intention, when it has been ascertained, not on the meaning of the words used to express it : Hileman *v.* Bouslaugh, 1 H., 344. It is always a precedent question whether the limitation of the remainder is made to the heirs in fee or in tail as such, and in its solution the rule itself renders no assistance. It is silent until the intention of the grantor or devisor is ascertained : Guthrie's Appeal, 1 Wr., 9.

In what sense did the testatrix use the words "heirs and assigns of such issue ?" This must be our first inquiry. Did she use the word "issue" in the technical sense of "heirs of the body," or did she, by the superadded words of limitation, to-wit, "the heirs and assigns of such issue," so far limit and restrain the generality of the term "issue" as to make it equivalent to the expression "children ?" This is a question of intention, to be ascertained according to the ordinary rules of construction peculiar to wills. Whatever may be the views of Smith, in his work on Executory Interests, 256, § 519, we submit that the question has been determined in Pennsylvania by the case of Robins *v.* Quinliven, 29 Sm., 333. If it be argued that the case has been misunderstood or misapplied, because, in addition to the superadded words in fee, there were words of distributive modification, we ask this court to consider whether there is any real distributive modification introduced by the words " to the issue and their heirs forever, in the proportions to which they would be entitled, under the intestate laws of Pennsylvania, respectively." What new principles of distribution are introduced ? Do not the words contain "an accurate periphrasis of the word heirs ?" "Heirs" has been judicially construed to mean "to such person or persons, for such estate or estates, and in such proportions as would, by the intestate laws of this Commonwealth, be entitled to the same if he had died intestate seized thereof in fee ": See Dodson *v.* Ball, 10 Sm., 492 ; Yarnall's Est., 20 Id., 335 ; Gaul's Est.,

30 Id., 348; Johnson's Appeal, 7 Norris, 346 ; Clark *v.* Scott, 17 Sm., 449. Even the strict technical import of the word "heir" means, in the words of Mr. Jarman, "the person or persons appointed by law to succeed to the real estate in question in case of intestacy." (2 Bigelow's Jarman on Wills, *61.) This is certainly the same thing as saying, "such persons as would be entitled to the same, under the intestate laws, had he or she died seised and possessed thereof." There is no more difference between the substance of the two expressions of this same idea than there is between a "green field" and "a field that is green." Gross on the rule in Shelley's Case, in Pennsylvania, in Table VI., presents an analytical statement of the cases in this court, where the word "issue" has been regarded in the technical meaning of the words "heirs of the body," but no limitations like those under consideration are exhibited as conferring an estate tail or in fee upon the ancestor. In Table VII., where the word "issue" is regarded in a sense different from the technical meaning of the words "heirs of the body," appear cases (Nos. 35, 36, 37, 39, 40, and 40 *a*), in which the prima facie meaning of "issue" is converted into a word of purchase by superadded words in fee : See also 1 Rhone's O. C. Practice, 764, § 475; Hill *v.* Hill, 24 Sm., 173 ; Daley *v.* Koons, 37 Leg. Intell., 299 ; Taylor *v.* Taylor, 13 Sm., 481. In Hill *v.* Hill, supra, SHARSWOOD, J., said : "No word is to be rejected to which a reasonable effect can be given." What, then, is the effect of the word "such," when the testatrix says : "To my daughters for life and their issue,·and to the heirs and assigns of such issue ?" Does it not at once suggest the thought that the word "issue" is used in the sense of "children of my daughters," and that there is no gift in fee until the grandchildren of the testatrix are reached? If this be so, the words are used as words of purchase, and the rule in Shelley's Case has no application.

Mr. Justice TRUNKEY delivered the opinion of the Court, March, 23d, 1885.

The only case relied on by the defendant to sustain the judgment of the court below, is Robins *v.* Quinliven, 79 Pa. St., 333. There the question arose upon a devise by the testator to his daughter "for and during her natural life, and after her death to her issue and their heirs forever, in the proportions to which they would be entitled under the intestate laws of Pennsylvania, respectively." The clear opinion of Justice WILLIAMS places the judgment on the true ground, namely : "The gift of the remainder is not to the issue alone, but to the issue and their heirs forever, in the proportions to which they would be entitled, under the intestate laws of Pennsylvania, respectively;

[Carroll v. Burns.]

that is to say, in equal shares as tenants in common. The limitation to the heirs general of the issue, with the superadded words of distributive modification, clearly shows that by "issue" the testator meant children, and intended that they should take the remainder .as purchasers and not as heirs by descent." He then refers to the settled rule, citing some of the authorities, that where there is a devise to one for life, with remainder to his issue as tenants in common, with a limitation to the heirs general of the issue, the issue take as purchasers. There is no sign that had the devise omitted the words of distributive modification, the word issue would have been construed to mean children.

In the defendant's argument it was suggested that the terms of that devise introduced no real distributive modification, but contained merely " an accurate periphrasis of the word heirs." Were this so, the fact would remain that the devise was construed to contain a distributive modification, in words equivalent to a provision that the issue and their heirs should take in equal shares as tenants in common. That construction was the basis of the decision. If erroneous the mistake was of fact, not of law. But there was no mistake. The common law rule relating to inheritance was materially changed by the statute which defines the persons who shall inherit the lands of intestates, and the proportions which they shall take. The devise of the remainder to the issue in the statutory proportions, was conclusive that the testator used "issue" for children.

In this case, the testatrix devised the real estate to her three daughters, to have and to hold to them during their natural lives, and after their death then to the lawful issue of her said three daughters, and the heirs and assigns of such issue. The rule is unquestioned that prima facie, in a will, the word issue means " heirs of the body," and will be construed as a word of limitation, unless there be explanatory words showing it was used in a restricted sense. It is urged that the word such, with the form of expression where used, is sufficient to show that by "issue" the testatrix meant children. There is no other explanatory word. What difference is there between a devise to A for life, and then to the issue of A, and the heirs and assigns of such issue, and a devise to A for life, and then to A's issue and their heirs and assigns ? Precisely the same persons are meant by issue in each phrase, and the word has the same power in one as the other. Each form expresses the same thing. If the word children were put instead of issue, each phrase would then express the same meaning, and the children after their ancestor's death would take in fee as purchasers. The clause in the will where " such" is used, is the

equivalent for "issue and their heirs." Technical words, or words of a definite meaning, must be construed according to their legal or definite effect, unless from other inconsistent words in the will it be clear that they are used in some other definite sense. Applying the legal rules of interpretation the intendment of this devise is plain.

A long current of decisions in England and in this Commonwealth has established and continued in force a rule as follows:

"When the ancestor by any gift or conveyance takes an estate of freehold, and in the same gift or conveyance an estate is limited either mediately or immediately to his heirs in fee or in tail; that always in such cases the heirs are words of limitation of the estate, and not words of purchase."

The rule operates to give the ancestor an estate for life in the first instance, and by force of the devise to his heirs, general or special, the inheritance also, by conferring the remainder on him as the stock from which alone they can inherit, and the source from which alone inheritable blood can spring: Hileman *v.* Bouslaugh, 13 Pa. St., 344. GIBSON, C. J., also said, that the rule subverts a particular intention in, perhaps, every instance of its operation; but it is an intention which the law cannot indulge, being an intention to create an inalienable estate tail in the first donee; and that the rule is too intimately connected with the doctrine of estates to be separated from it without breaking the ligaments of property.

Aside from the words of distributive modification, the devise in Robins *v.* Quinliven would have been within the operation of the rule, and, therefore, that case does not determine this in favor of the defendant. Perhaps the testatrix intended to give a life estate to her daughters and the remainder in fee to their children; but she has used words which definitely vest in her daughters an estate tail, and the courts are not at liberty to wrest them so that they may mean anything else. She has used apt words to create a particular estate in certain persons, and it ought not to be arbitrarily ruled that she intended some other thing than that expressed.

> Judgment reversed, and judgment is now entered for the plaintiff, sum to be liquidated by the prothonotary of the Common Pleas.

MERCUR, C. J., and GORDON and STERRETT, JJ., dissent. They think the language of the testatrix so clearly shows she meant children, and not heirs generally, that the rule in Shelley's case does not apply.