## Arnold *v.* Muhlenberg College, Appellant.

*Wills—Rule of construction—" Issue "—Devise—Rule in Shelley's case.*

1. "Issue" is primarily a word of limitation and while the context may show that it is used as a word of purchase, it will not be so construed unless other language of the will requires it to carry out the manifest intention of the testator.

2. The words "die leaving no issue" have a fixed legal meaning, and in the absence of language in the will disclosing a different intent they import a general indefinite failure of issue, and not a failure at the death of the first taker.

3. Rules for the construction of wills were not made to defeat, but to carry out the intention of the testator, and hence if that intention is clearly manifested in the instrument and is not violative of some rule of law, it cannot be defeated by the application of technical rules of construction.

4. Where there is a devise of real estate to two daughters, "to have, hold and occupy the same for and during the natural lives and the survivor of them" and should the daughters both die leaving no issue, then to descend to two other children of testator, a son and daughter, "and after their decease to their heirs," but should the daughter last named die "leaving no issue," her portion to go to the son " and after his decease to his heirs," the first takers are invested with an estate tail, which by the Act of April 27, 1855, P. L. 368, is enlarged into a fee simple estate.

Argued Jan. 31, 1910. Appeal, No. 313, Jan. T., 1909, by defendant, from judgment of C. P. Lehigh Co., April T., 1909, No. 62, on case stated in suit of Maria E. Arnold and Martha A. Myer v. Muhlenberg College. Before BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Case stated to determine title to real estate. Before TREXLER, P. J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in entering judgment for plaintiff on case stated.

. *Lawrence H. Rupp,* for appellant.—When it is apparent from extrinsic circumstances proper to be considered, or from

the provisions of the will or other instrument, that the testator or maker intended to use "issue" in the sense of children, its meaning will be so limited: Taylor v. Taylor, 63 Pa. 481; Robins v. Quinliven, 79 Pa. 333; Shalters v. Ladd, 141 Pa. 349; Parkhurst v. Harrower, 142 Pa. 432; Peirce v. Hubbard, 152 Pa. 18; Nes v. Ramsay, 155 Pa. 628; O'Rourke v. Sherwin, 156 Pa. 285; Shearer v. Miller, 185 Pa. 149.

The word "issue" is said to be even more flexible than the more technical term, "heirs of the body," and is readily construed as a word of purchase to effectuate the intention of the testator: Yarnall's App., 70 Pa. 335; Robins v. Quinliven, 79 Pa. 333; Wistar v. Scott, 105 Pa. 200.

*Reuben J. Butz*, with him *Arthur L. Biery*, for appellees.—That an estate may pass by implication though there are no express words of gift, it being necessary to imply a gift in order to carry into effect the intention of the testator as shown by the will, is proved by the following cases: Dale v. Dale, 13 Pa. 446; Striewig's Est., 169 Pa. 61; Beilstein v. Beilstein, 194 Pa. 152; Sheets' Est., 52 Pa. 257; Phillips's Est., 10 Pa. C. C. Rep. 374; Lindsay v. Lindsay, 4 W. N. C. 358.

Our contention as to what is carried by the use of the words, "and the survivor of them," is well supported by authority: Jones v. Randall, 1 J. & W. 100; Bryan v. Twigg, L. R. 3 Ch. App. Cas. 183; Eales v. Earl of Cardigan, 9 Sim. 384; Hawkins v. Hamerton, 16 Sim. 410; Clark v. Baker, 3 S. & R. 470.

Issue is a general name, including all, even to the remotest, descendants: Wistar v. Scott, 105 Pa. 200.

The nature of the devise over has always been looked at to ascertain whether a definite or indefinite failure of issue was intended: Taylor v. Taylor, 63 Pa. 481; Roe v. Jeffery, 7 T. R. 589; Trafford v. Boehm, 3 Atk. 440.

OPINION BY MR. JUSTICE MESTREZAT, February 21, 1910:

William Dorney died on March 22, 1881, leaving a will dated September 18, 1880. He left to survive him a widow and five children, four of whom were deaf-mutes. Subject to his widow's life estate, and with the exception of a small be-

quest to the fifth child, Rebecca, to whom he had advanced a sum equal to her share, he distributed his estate among the four deaf-mutes. At the date of the will, Maria E. and Martha Ann (called Massy Ann in the will) were married and the former had one child, living. Subsequently a child was born to Martha which died in infancy. Henry died in 1908 leaving several children to survive him. Emmaline (called Elemina in the will) was the eldest of the four deaf-mutes, was never married, and was about thirty-eight years of age at the date of the will.

In the fifth clause of his will the testator provides as follows: "I give and bequeath unto my daughters Maria E. and Massy Ann, all that certain messuage farm and tract of land . . . . containing seventy six acres more or less, to have hold and occupy the same for and during the natural lives and the survivor of them, and should my said daughters Maria E. and Massy Ann both die leaving no issue the said farm shall go and descend to my son Henry W. Dorney and Elemina and after their decease to their heirs should the said Elemina die leaving no issue, her portion shall go to my son Henry W. and after his decease to his heirs."

We agree with the conclusion of the learned court below that by this devise Maria E. and Martha Ann Dorney took a fee simple estate in the farm devised, but we do not agree with the statement in the opinion that the evident intention of the testator was to give the farm to his daughters for life and to the survivor of them for life, and if they should die without leaving children living at the time of their decease, then over to their brother. If such was the testator's intention as disclosed by the language of the will, it should be carried out and the daughters declared to take but a life estate in the farm. Rules for the construction of wills were not made to defeat, but to carry out the intention of the testator in the disposition of his estate, and hence if that intention is clearly manifested in the instrument and is not violative of some rule of law, it cannot be defeated by the application of technical rules of construction.

The language of the fifth clause of the will does not show

that the testator meant the estate should go over if the daughters died without leaving children. This interpretation is an assumption that has no basis to support it either in the fifth or any other clause of the will, and is not required to give effect to any other part of the instrument, nor to carry out the general scheme of the testator in disposing of his estate. Hence, it is not permissible to construe clause five other than its language imports. The fact that the interest in the estate given Emmaline in clause four goes over if she "should die childless" cannot defeat the testator's clearly defined purpose, expressed in apt words, to give a different estate in another clause of the testament to another child when the context does not require it. We may repeat as applicable here what Mr. Justice DEAN said in Graham v. Abbott, 208 Pa. 68, in answer to the argument that the devise over, under consideration there, should be construed subject to a definite failure of issue because the words in the devises to the other children were so construed (p. 72): "As to the devises to the others of his children, the language clearly signifies a definite failure of issue; the clause before us clearly does not import a definite failure of issue; the intention is not doubtful, for apt words to express it are used; the law imperatively fixes their meaning when used; they are not out of harmony with testator's intention though they give a different estate to the one son from that given to his other children." At the date of the will in the case at bar the testator knew that Emmaline Dorney had passed the years of young womanhood and was not married, and that both of her sisters, were several years her junior, were married and one had living issue.

The words in clause five: "die leaving no issue," have a fixed legal meaning, and all our cases hold that in the absence of language in the will disclosing a different intent they import a general indefinite failure of issue, and not a failure at the death of the first taker. No other part of the will in question, except the third clause which gives a life interest in the whole estate to the widow, relates to or disposes of the portion of the estate devised in this clause. In the first part of the

clause, a life estate is given the two daughters and the survivor of them. Then follows the language which disposes of the remainder of the estate in the seventy-six acre farm: "and should my daughters Maria E. and Massy Ann both die leaving no issue the said farm shall go and descend to my son Henry W. Dorney and Elemina and after their decease to their heirs should the said Elemina die leaving no issue, her portion shall go to my son Henry W. and after his decease to his heirs." There is nothing in this language which shows that the words "die leaving no issue" are not to have their proper legal meaning or that the estate was to go over before the entire lineal descent of both daughters had become extinct. This is the settled meaning of the language uncontrolled by the context. It is applying a familiar rule to hold that the first takers, the daughters, were the primary objects of the testator's bounty, also, that the testator intended to give them an absolute rather than a defeasible estate, and it will not be presumed that their estate or interest in the farm is to be lessened or reduced in favor of their brother and sister, the remainder-men, to whom the testator had given an equal if not greater interest in other portions of his estate. Henry was devised substantially a 100 acre farm in fee subject to an interest therein given Emmaline who was also devised a house and two lots in fee. The farm devised to Maria E. and Martha Ann, as will be observed, contains seventy-six acres. They were both married and a child had been born to one of them. Can it reasonably be inferred that the testator intended to give only a life estate in this farm to them with a remainder in fee to Henry and Emmaline who had already received at least as large a part of the testator's estate? There is nothing in any part of the will that would warrant the conclusion that the testator intended to thus discriminate against the daughters to whom he gave the seventy-six acre farm.

A careful examination of clause five convinces us that there is nothing in it which changes the presumption that the words: "die leaving no issue," in the event of which the estate goes over, means other than an indefinite failure of issue.

It must unequivocally appear if it was intended to use them otherwise: Guthrie's App., 37 Pa. 9. "Issue" is primarily a word of limitation, and while the context may show that it is used as a word of purchase, it will not be so construed unless other language of the will requires it to carry out the manifest intention of the testator. The devise over to Henry and Emmaline in clause five is not a life estate. And the limitation over to them, if Maria and Martha who are their heirs should "die leaving no issue," creates an estate tail: Amelong v. Dorneyer, 16 S. & R. 323. The devise to the survivor of the two sisters does not change the settled rule that the words used import an indefinite failure of issue: Clark v. Baker, 3 S. & R. 470. Nor is the fact that the devise over to Henry and Emmaline who were then living sufficient of itself to show that a definite failure of issue was intended: Lapsley v. Lapsley, 9 Pa. 130; Hackney v. Tracy, 137 Pa. 53.

The intention of the testator, as expressed in the language of his will, was that the farm should not go to Henry and Emmaline until after the whole line of the lineal descent of Maria and Martha had become extinct, and hence by operation of the rule in Shelley's case the life estate of the latter was enlarged into a fee tail which is converted into a fee simple by the Act of April 27, 1855, P. L. 368. It follows that the plaintiffs are entitled to recover in this action, and the judgment is affirmed.