## Ritter's Estate.

*Will—Devise—Rule in Shelley's case—"Bodily heirs."*

Testatrix devised a house and lot to her daughter for life, "and after her death to be divided in equal shares among her bodily heirs. Should, however, none of the bodily heirs of my daughter arrive at the age of twenty-one years, and leave no lawful bodily heirs, then the aforesaid house shall fall back to my other children and their heirs forever." *Held*, that the daughter took an estate tail, which under the operation of the statute became an estate in fee simple.

Argued Nov. 13, 1912. Appeal, No. 194, Oct. T., 1912, by Charles Elmer Phillippi, from decree of O. C. Berks Co., dismissing petition for partition in Estate of Elizabeth Ritter, deceased. Before Rice, P. J., Henderson, Morrison, Orlady, Head and Porter, JJ. Affirmed.

Petition for partition. Before Bland, P. J.

The case turned upon the construction of the following clause in the will of Elizabeth Ritter.

"I give and bequeath to my daughter Harriet, my new house, adjoining on the East Magdalena Ritter, in Cherry Alley, in the City of Reading, on condition however that my daughter Harriet accepts the said house at eight hundred dollars, and then my daughter Harriet shall have the said house in possession as long as she lives and enjoys the rents and income thereof and after her death be divided in equal shares among her bodily heirs, should however none of the bodily heirs of my daughter Harriet arrive at the age of twenty-one years and leave no lawful bodily heirs, then the aforesaid house shall fall back to my other children and their heirs forever but should my daughter Harriet refuse to accept the said house as hereinbefore ordered at eight hundred dollars, then shall the said house likewise be appraised, like my other property and then it is my will and I do herewith order that my executors shall place upon interest on real estate the sum of eight hundred dollars out of the share of my daughter Harriet in my estate and the

yearly interest shall be paid to my daughter as long as she lives and after her death be divided either to her bodily heirs or otherwise to my other children or their heirs, as ordained for the house."

The petition was filed by Charles Elmer Phillippi, a son of Harriet Ritter Phillippi, and a grandson of Elizabeth Ritter. Harriet Ritter Phillippi had two sons, Jacob R. Phillippi and Philip F. Phillippi, both of whom reached the age of twenty-one years. Philip F. Phillippi, the father of appellant, died in the lifetime of Harriet Ritter Phillippi. At the time the petition was filed Jacob R. Phillippi as a devisee of his mother was in possession of the house referred to in the will.

The court dismissed the petition.

*Error assigned* was decree dismissing the petition.

*Edward D. Trexler*, with him *William Rick*, for appellant.—The words "bodily heirs" coupled with words of distributive modification are converted into words of purchase by the superadded words of limitation, "leave no lawful bodily heirs:" Guthrie's Appeal, 37 Pa. 9; Chew's Appeal, 37 Pa. 23; Robins v. Quinliven, 79 Pa. 333.

The testatrix in binding the estate over contemplated a definite failure of issue: Eichelberger v. Barnitz, 9 Watts, 447; Physick's App., 50 Pa. 128; Powell v. Board of Domestic Missions, 49 Pa. 46; Westenberger v. Reist, 13 Pa. 594; Snyder's App., 95 Pa. 174; Miller's Estate, 145 Pa. 561; Taylor v. Taylor, 63 Pa. 481.

The testatrix having intended a definite failure of issue, the Act of April 27, 1855, P. L. 368 (estates-tail), is rendered inoperative by the executory devise over. To bring a devise within the rule in Shelley's case, the limitation in remainder must be to the heirs, in fee or in tail, as a nomen collectivum for the whole line of inheritable blood; wherefore, the rule does not apply in this case where we have a devise to Harriet for life, with a limitation over to her bodily heirs, exclusive of those who do

not arrive at the age of twenty-one or dying in minority do not leave bodily heirs: Kuntzleman's Estate, 136 Pa. 142; McCann v. McCann, 197 Pa. 452; Jones v. Jones, 201 Pa. 548.

*C. H. Ruhl*, with him *John H. Rothermel*, for appellee.— It is contended for the appellee here that the clause which provides for a reversion to the other children of Elizabeth Ritter, the devisor, in case none of the bodily heirs of Harriet Ritter Phillippi arrive at the age of twenty-one years, contemplates an indefinite failure of issue and therefore does not limit her estate to a life estate: Hoff's Estate, 147 Pa. 636; Roth v. Cohn, 236 Pa. 534.

Under the rule in Shelley's case, a fee was given to the devisee of Elizabeth Ritter: Hiester v. Yerger, 166 Pa. 445; Armstrong v. Michener, 160 Pa. 21; Rancel v. Creswell, 30 Pa. 158; Criley v. Chamberlain, 30 Pa. 161; Ogden's App., 70 Pa. 501; Grimes v. Shirk, 169 Pa. 74.

OPINION BY HEAD, J., April 21, 1913:

The will of Elizabeth Ritter contained, inter alia, the following devise: "I give and bequeath to my daughter Harriet my new house . . . . on condition, however, that my daughter accepts the said house at Eight Hundred Dollars, and then my daughter Harriet shall have the said house in possession as long as she lives and enjoy the rents and income thereof, and after her death be divided in equal shares among her bodily heirs. Should, however, none of the bodily heirs of my daughter Harriet arrive at the age of twenty-one years and leave no lawful bodily heirs, then the aforesaid house shall fall back to my other children and their heirs forever, &c." Harriet accepted the devise at the valuation. She married and had two sons, both of whom lived until after they had reached the age of twenty-one years. One of them, after having attained his majority, died in the lifetime of the said Harriet, leaving to survive him one son, the appellant. The other son of Harriet survived his mother and is still living. The

said Harriet, by her last will, devised to that son, the appellee, the property which was the subject of the devise we have quoted in the will of Elizabeth Ritter. The contention of the appellant is that under that devise Harriet took but an estate for life with remainder in fee to her two sons. As a consequence he claims to be the owner of the undivided one-half of the property which was the subject of that devise. The contention of the appellee is that his mother Harriet took an estate in fee which by the terms of her will has become vested in him. This view was sustained by the learned court below, and the petition of the appellant for a writ of partition was dismissed. From that order or decree this appeal was taken.

Let us first look at the naked devise, stripped of any qualifying words, to determine what its nature and extent would be in the absence of such qualifying words. We would then have simply a devise to Harriet for life with remainder to her "bodily heirs," i. e., heirs of her body. From time immemorial almost the law has declared that the estate created by such a devise would be an estate tail, which, under the operation of our statute, would become an estate in fee. The learned counsel for the appellant, conceding this to be true, urges upon us the conclusion that because of the words of distributive modification used in connection with the words "bodily heirs," and the following superadded words of limitation in the devise over, on the contingency that did not happen, the words "bodily heirs" are to be construed as if the testatrix had said children. This would convert the words, "bodily heirs," into words of purchase instead of words of limitation, and bring about the result desired from his standpoint.

The persistence with which the law clings to the long-established meaning of the expression here used by the testatrix, and the extent of the burden to be borne by one who attempts to convert those words into words of purchase have been reiterated in a long line of cases, but nowhere perhaps are they stated more clearly and strongly

than by Mr. Justice STRONG in Guthrie's Appeal, 37 Pa. 9. In that case the attempt was made to show that the word "children," ordinarily a word of purchase, was to be construed as if the testator had used the word "heirs" or the expression "heirs of his body." The argument of Mr. Justice STRONG was to show that it was just as difficult to take the word "children" out of its proper class and convert it into a word of limitation as it would be to take the word "heirs" or the expression "heirs of the body" out of the opposite class and convert them into words of purchase. He says: "Admitting now, with Mr. Hayes, that the word 'children' may be construed to mean 'heirs of the body,' yet there must be, as he says, an express warrant for this change of its legitimate meaning, under the hand of the author of the gift. The intention to use it as a word of limitation, contrary to its natural import, must be rendered clear by the words of the grantor or testator himself. Conjecture, doubt, or even equilibrium of apparent intention, will not suffice." The opinion, then, referring to the celebrated argument of Mr. Justice BLACKSTONE in Perrin v. Blake, informs us that in that case the words used were "heirs of the body," and the defendant labored to show that they were words of purchase. "It is not incumbent on the plaintiff to show by express evidence, that his testator meant to adhere to the rule of law (i. e., that heirs of the body are words of limitation), for that is always supposed till the contrary is clearly proved; but it is incumbent on the defendant to show by plain and manifest indications, that the testator intended to deviate from the general rule; for that is never supposed till made out, not by conjecture, but by strong and conclusive evidence."

The burden then is strongly upon the present appellant, not merely to raise a doubt as to whether or not the testatrix used the expression she chose according to its legal significance, but to demonstrate clearly and satisfactorily from the will itself, that she did not intend so to use them. To accomplish this he first relies on the words of distribu-

tive modification used by the testatrix, to wit, "And after her death be divided in equal shares among her bodily heirs." In the same opinion the effect of such distributive words, as well as of words of superadded limitation, on which the appellant finally relies, is thus stated: "True, it has been ruled that, in cases where the remainder is limited to 'heirs of the body,' a direction that they shall take distributively, will not prevent the application of the rule in Shelley's Case; but this is because the presumption of limitation arising from the use of the word 'heirs,' is too strong to be rebutted by the repugnant provision for distribution. . . . So, too, it has been held that the rule applies, though, in addition to the first words of inheritance, viz., heirs or heirs of the body, there are superadded words of limitation, similar to the first, but this is for the same reason."

In Criswell's Appeal, 41 Pa. 288, the opinion was delivered again by Mr. Justice STRONG. He says: "The court below inferred that the testator meant 'children,' by the word 'heirs,' from his use of the alternative phrase, 'or to such of them as may be then living.' . . . We are not convinced by this argument. Let it be admitted that the words 'then living' are strictly of no legal meaning, when applied to heirs, this is no sufficient reason for holding that the testator, in the use of technical words of limitation, intended to depart from their ordinary legal meaning. It is not so easy to overcome the contrary presumption. . . . The books are full of cases in which it has been held that superfluous, and even inconsistent doctrines in a will, do not suffice to reduce the word 'heirs,' or 'heirs of the body,' into words of purchase. Thus, words of superadded limitation alone are insufficient, as in case of a gift to A, for life, remainder to the heirs of his body, and to their heirs forever. So, when there are added words of distributive modification, as in a gift to A, for life, remainder to the heirs of his body, as tenants in common, share and share alike. These words of additional limitation or of distribution cannot take

effect, if the word 'heirs' retains its legal meaning; and yet they are uniformly ruled to be insufficient to change it into a word descriptive of persons. See Smith on Executory Interests, pp. 472 et seq., and cases collected." This case is cited with approval by Mr. Justice ELKIN as late as 213 Pa. 489. In Ogden's Appeal, 70 Pa. 501, Mr. Justice AGNEW says: "It is well settled that a devise to the lawful issue of the first taker is prima facie a limitation to the heirs of the body of the devisee, and therefore vests a fee tail; and this is the case even where the devise to the first taker is expressly for life. (Cases cited.) It requires more than mere words of distribution to limit this prima facie effect of the phrase. The words 'in equal shares,' without something else to indicate the intention of the testator, will not reduce the inheritance to a mere life estate. Even the words 'as tenants in common' will not of themselves limit the entail." The latest cases on the general subject, as we read them, show no intention to depart from the well-beaten track indicated by the excerpts we have quoted from the opinions of two most distinguished jurists: Arnold v. Muhlenberg College, 227 Pa. 321; Roth v. Cohn, 236 Pa. 534.

It is true that where, taking the whole of the will together, and viewing it from every angle, the intent of the testator plainly appears that he used the word heirs as identical with children, the courts will not hesitate to so construe it in obedience to the cardinal principle that makes the intent of the testator, when ascertained, the dominant factor in every case. And so in some of the cases cited and relied on by counsel for appellant, the court was able to reach the conclusion that to effectuate the manifest intent of the testator, the legal presumption, however strong, must give way. Thus in Robins v. Quinliven, 79 Pa. 333, the word used by the testator was "issue," which although ordinarily construed to mean heirs of the body, has been frequently held to mean children by reason of the plainly expressed intent of the testator to so use it. In that case there were not only

superadded words of limitation, but there was a clear expression by the testator that he did not intend to give to his daughter an estate of which her husband could be tenant by the curtesy.

It cannot be denied then that the expressions relied upon by the appellant have legal significance and force. They tend, in some degree certainly, to support the conclusion that the testatrix sought to cast the inheritance upon individual persons rather than upon an entire line of descent from a given stock. But, according to them all of the potency that can fairly be claimed for them, we cannot say their presence in this will does more than render obscure and doubtful what, without them, would have been plain and clear. This is not enough. "Conjecture, doubt, or even equilibrium of apparent intention will not suffice." In all such cases it is safer to follow the steady light that emanates from the fixed legal presumption than to grope our way in the darkness that would otherwise envelop each particular case as it arose.

The order or decree of the learned court below dismissing the appellant's petition is affirmed.