Rosengarten Estate.

Argued December 2, 1943; reargued January 4, 1944. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Hughes, JJ.

*Joseph H. Grubb, Jr.,* and *Henry S. Drinker,* with them *Eric A. McCouch* and *J. Horace Churchman,* for appellants.

*Gordon A. Block,* of *Wolf, Block, Schorr & Solis-Cohen,* for appellees.

Opinion by Mr. Justice Allen M. Stearne, March 20, 1944:

The single question of will construction raised by these four appeals is whether the corpus is distributable to grandchildren *per capita* or *per stirpes.*

Testator placed his residuary estate in trust to pay half the net rents, income and profits to his wife for life,

34

and upon her death, to hold the principal in accordance with his provisions respecting the remaining half of his residuary estate. The remaining one-half of the residuary estate was divided "into as many shares or portions as (he) may leave children living at the time of (his) death and to pay the net income of each of said shares to such children respectively for and during the term of his or her life. . . ." The sixth item of the will, and the one which gives rise to this litigation, pertains to the disposition of the income until the death of the last survivor of the children, and the distribution, at such time, of the corpus. The item in controversy reads as follows: "Sixth: Upon the death of any of my said children leaving child, children or the issue of such, then I direct my said Trustees to pay the share of the net income of the one so dying to such child, children or issue until the death of my last surviving child, and in default of such child children or issue, then to pay over said share of the net income to and among the persons entitled under this my will to the other shares of my said residuary estate. Upon the death of the last survivor of my said children, then I direct my said Trustees to convey, assign, transfer and pay over the principal of my said residuary estate to my grandchild or grandchildren or their issue living at that time, such issue taking the share their parent would have taken if living.—I direct that the share which may thus be paid to the child, children or issue of any of my sons to whom an advancement may have been made as provided in the Fifth Item of this my will shall be taken subject to such advancement and the amount thereof be deducted from such share."

Item Five, referred to in the foregoing Item, reads as follows: "Fifth: I authorize my said Trustees to pay to each of my sons upon his arrival at the age of twenty-five years or any time sooner should either of them so desire, for the purpose of furnishing capital to engage in business, a portion of the principal producing his share of net income, not exceeding sixty per cent thereof, absolutely."

The wife survived and subsequently died. The one-half part of principal upon which she had received income merged with the other half of the residuary principal, and no question arises concerning this portion. Testator was survived by five children. Alice, Albert, Katharine, Harold and Mitchell. Alice died without issue and her share merged in the residue. The remaining four children successively died leaving issue. Mitchell was the last survivor, and it was upon his death in 1942 that the trusts terminated.

No grandchildren were existent at the date of the will. Two had been born before testator's death. At the date of the death of the last surviving child, when the trusts terminated, there was twelve living grandchildren and two descendants of a deceased grandchild. One grandson is the son of a deceased son; another grandson likewise is the child of a deceased son; ten grandchildren are the children of a deceased daughter. The two great-grandchildren are children of a deceased granddaughter.

The auditing judge ruled that the corpus was distributable to the grandchildren *as a class,* with issue of deceased grandchildren substituted by representation, and consequently, the grandchildren took *per capita.* Upon exceptions, a majority of the court en banc approved this interpretation.

Even the minority in the court below, however, agree that the gift to the grandchildren would be *per capita* if only that part of the sixth paragraph is considered *"in which the gift of principal is made".* The difference in view arises out of the effect of the testamentary provision in the Fifth Item concerning the right of *sons* to advancements out *"of the principal producing his share of income"* and the direction, in the last part of the Sixth Item, "that the share which may thus be paid *to the child, children or issue of any of my sons to whom an advancement may have been made . . .* shall be taken subject to such advancement and the amount thereof be deducted from *such share".* The minority considered

the effect of this clause upon the size of the shares of grandchildren, depending upon whether their respective fathers did or did not secure an advancement and the amount thereof. Apparently great stress was placed upon the use of the word share *in the singular*. They regarded this as referring to the share of the *son* (upon which a son received income) as contra-distinguished from the "share [payable] to the *child, children or issue*" of the son, as interpreted by the majority. Because of these considerations President Judge VAN DUSEN wrote: "I perceive that the testator is thinking stirpitally."

We agree with the interpretation of the orphans' court for the reasons and authorities cited by Judge HUNTER in his learned and comprehensive opinion.

A reading of the will reveals that the scrivener was professional and employed language in its correct technical sense. When the document was executed testator had no grandchildren. He was planning the ultimate distribution of the *corpus* of his estate "at long range". His general testamentary scheme is plainly expressd in correct language. It was his clear intention that his children should share equally in the *income* until the death of the last surviving child, at which time the *corpus* was distributable to his grandchildren. This situation has frequently been before the court. It has always been held that such a gift to grandchildren, as a class, is per capita. In our opinion, what confuses this construction is that the testator substituted issue of deceased children by representation *in income* until the death of the last surviving child, and also substituted issue of deceased grandchildren by representation in such per capita share of *corpus*. A reading of the cases cited by Judge HUNTER, which we later cite, reveals that such provisions have never been held to indicate an intent to change a per capita distribution to one per stirpes. Another confusing element is the direction that sons could receive portions of the principal, and the method of repayment

by the *issue of sons* when such issue received their share of corpus. And lastly, confusion in thought is created by the curious circumstance that one child left ten children surviving, two of the other three children left but one child surviving, and the fourth child, while having had two children, left but one child to participate in this distribution. It may well be that testator never contemplated such a distribution of grandchildren among his children, especially since the will was executed before he had any grandchildren. His testamentary scheme, erected by well-defined technical language, should not be torn down by a *supposed* contrary intention, which is merely *inferred* from what appellants presume would be testator's intention had he been acquainted with the family composition at the time of the distribution of the corpus.

It is conceded by all that the general testamentary scheme is plain and unequivocal. It is not unusual for a parent to give income to his children for life until the death of his last surviving child, and then to give the *corpus* to his grandchildren. Under such a testamentary plan, a gift to grandchildren as a class, of necessity, means a *per capita* distribution. A study of the philosophy underlying this principle will disclose that when a testator makes a gift to a group of individuals of the same class, he is not mentally dividing them stirpitally, and increasing or decreasing their shares depending upon the fecundity of their parent. He is thinking of each member of the class as an *individual.* Thus a gift to grandchildren, nephews, cousins, etc., as a class, cannotes an equal share to each individual of the class, i. e. : per capita.

This principle is well settled in the law. Judge PENROSE so decided in *Roney's Estate,* 19 D. R. 565; Judge GEST in *Lennig's Estate,* 12 D. & C. 51, 55, and Judge VAN DUSEN in *Jayne's Estate,* 16 D. & C. 51, 53. We have frequently so decided: *Duckett's Estate,* 214 Pa. 362, 63 A. 830; *Joyce's Estate,* 273 Pa. 404, 117 A. 90; *Bay-*

*ard's Estate,* 340 Pa. 488, 17 A. 2d 361; *Lenhart's Estate,* 344 Pa. 358, 25 A. 2d 725. See *Restatement of Property,* Section 300.

The sole dispositive words of bequests to the grandchildren are found in the Sixth Item: "Upon the death of the last survivor of my said children, then . . . to pay over the principal . . . to my grandchild or grandchildren . . ." For the reasons and authorities above cited, this is a grant, in words of a definite and technical meaning, to grandchildren *per capita.*

We are therefore required to examine this will in its entirety to ascertain whether, despite words which we have always held to mean a gift of a per capita share, testator intended to use the words in some other definite sense: *Carroll v. Burns,* 108 Pa. 386; *Smith's Petition,* 291 Pa. 129, 139 A. 832; *Graham v. Abbott,* 208 Pa. 68, 57 A. 178; or perhaps stated more accurately, whether language in other parts of the will reflects testator's intent not to distribute the corpus of the estate per capita as the words of the gift imply: *Moore's Estate,* 241 Pa. 253, 88 A. 432.

It is axiomatic that, in expounding a will, the question is not what testator meant, but what is the meaning of his words, *Ludwick's Estate,* 269 Pa. 365, 112 A. 543. Thus it will not suffice in this case judicially to *surmise* that testator is "thinking stirpitally". The test is what *words* testator employed to reveal, either expressly or impliedly, his intention to dispose of the corpus stirpitally. The burden of altering or changing the per capita gift to the grandchildren, expressed in plain language with fixed and definite legal meaning, is very great. Moreover, the burden is increased where the language depended upon to alter the meaning immediately follows the clause creating the gift. For example: an absolute estate will not be cut down by subsequent provisions in the will unless testator has expressed a clear and unambiguous intention so to do: *Haydon's Estate,* 334 Pa. 403, 6 A. 2d 581; *Goodin's Estate,* 328 Pa. 548,

196 A. 1. Examples could be multiplied. In *Hogg's Estate,* 329 Pa. 163, 196 A. 503, this Court held, in a gift to grandchildren, that there could be no *implied* intention to exclude children of *after-born children,* even though the testator's children were named and *after-born children* took absolutely *because not contemplated and unprovided for in the will.* It requires plain and unambiguous words to exclude any member of a class.

There are three principal reasons advanced by appellants to demonstrate what they contend is testator's *true* intent to pass this corpus to his grandchildren stirpitally, despite his words to the contrary.

The first reason is that testator directed that his estate be divided into "as many shares or portions" as he may leave children, and that since 1910 the trustees have administered the residuary trust estate as four separate trusts. This, according to appellants' view, suggests per stirpes distribution. However, each trust was dependent upon the others in respect to its termination, i. e., until the death of the last surviving child when the *corpus* was made payable to "grandchildren" as a class —thus per capita. Had it been testator's unequivocal intention to pass the corpus *stirpitally* upon the termination of all the trusts, it would have been quite a simple matter for testator to provide that the grandchildren or their issue should take the share of principal upon which their respective parents had enjoyed the income. But this testator did not do. In this circumstance alone we cannot *imply* such intent.

The second assigned reason relates to the effect of the testamentary direction in the Fifth Item that a son could secure an advancement up to sixty percent of the "portion of the principal producing his share of net income". In the Sixth Item, immediately following the gift of the corpus to the grandchildren in language which we have always held to mean a gift per capita, this phrase appears: *"I direct that the share which may thus be paid to the child, children or issue of any of my sons to whom*

*an advancement may have been made as provided in the Fifth Item of this my will shall be taken subject to such advancement and the amount thereof be deducted from such share".* Appellants maintain that the direction to deduct the son's advancement "from such share" refers to the son's share upon which he was to receive *income.* They therefore conclude that this indicates a testamentary intent to pay the remaining part of the corpus per stirpes to the son's issue. We are unable to accept this construction. After directing distribution to grandchildren in language which we have always construed to mean per capita, it is plainly stated that it is the *"share which may thus be paid to the child, children or issue"* of a son who received an advancement which is to be "subject to such advancement" and the "amount thereof (to) be deducted from such share". From every ordinary and grammatical sense these words refer to the *share payable to grandchildren.* See *Bender v. Bender,* 226 Pa. 607, 75 A. 859; *Long et al. v. Stout,* 305 Pa. 310, 157 A. 607; *Canfield's Estate,* 109 Pa. Superior Ct. 329, 167 A. 500.

The third and final contention rests on a presumption that testator did not intend a per capita distribution to grandchildren because of its effect upon the size of the shares of certain grandchildren, depending upon the suggested kaleidoscopic situations that might have arisen where a son did or did not secure an advancement, the amount thereof and the time when he received it. President Judge VAN DUSEN suggests that the per capita share of a grandchild might be less than the amount of an advancement to the father, in which event, that branch of the family would get no principal, and which "the testator could hardly have intended". It is not unnatural or unjust for a testator to direct that an advancement to a father be deducted from his child's share in distribution. Here the advancement was to a son to enable him to enter business. If the child of such son gets nothing in this distribution, the result cannot be considered contrary to

what testator contemplated. Furthermore, the son received this part of the principal shortly before the termination of the trust, and it is quite within the realm of possibility that the grandchild now affected inherited that amount from his father. But whether he did or did not, such fact cannot influence this question.

Appellants suggest that a child of a deceased child might have been receiving *income* on a fourth of the principal, and on distribution of corpus only receives a one-twelfth share. This is regarded as an anomaly. The answer appears plain. It is precisely what testator directed. There are many cases where *income* is given in different proportions than the *principal*. As noted above, there is nothing to prevent an equal distribution of *income* to children or their issue until the death of the last surviving child and then a distribution per capita to his grandchildren as a class. Nor are the various possibilities of increase or decrease of per capita shares to grandchildren, depending upon advancement to sons, sufficient indication of an intent contrary to the words of precise and technical grant. It may well be that, had testator contemplated that one of his children would leave such a vastly disproportionate number of children as compared with his other children, he would have made other testamentary dispositions. But he did not. He passed his residuary estate to his grandchildren, per capita, as a class. We find nothing in other parts of the will which indicates any contrary intent than that which he so clearly and unequivocally expressed.

All appeals are dismissed. The definitive decree is affirmed. All costs to be paid from the corpus.