## Ludwick's Estate.

## Kiebler, Appellant, *v.* McCutcheon et al.

*Will—Devise—Gift—Election to take property—Vesting of title —Rules of construction—Presumption—Evidence—Act of April 8, 1833, P. L. 249.*

1. A devise of a property vests in the devisee a fee simple title thereto upon acceptance of the gift, though he is to be charged with its value as thereafter appraised.

2. Where the gift, however, is coupled with a right to refuse to accept it, the title does not vest until a decision upon this point.

3. It is of the nature of a right to elect one of two things, that actual ownership shall not be acquired until the election is made.

4. A presumption of fact must always give way to adverse proof on the subject.

5. Where a person who is entitled to elect to take property dies without having exercised the right, neither his personal representatives nor heirs can make the election unless the will expressly so provides.

6. Section 12 of the Act of April 8, 1833, P. L. 249, does not apply in cases where a child survives his parents.

7. Every word in a will must be given effect, if it is reasonably possible so to do.

8. Where every word in a will may be given its plain meaning, without destroying the sense, an enlarged meaning is not allowable for the purpose of carrying out a supposed but unexpressed intention of the testator.

9. The question in expounding a will is not what the testator meant but what is the meaning of his words.

Argued January 18, 1921. Appeal, No. 3, Oct. T., 1921, by Cora Gertrude Kiebler, from decree of O. C. Westmoreland Co., May T., 1920, No. 22, dismissing petition for reappraisement of real estate in estate of Jacob Ludwick, deceased. Affirmed.

Appeal, No. 4, Oct. T., 1921, by plaintiff, from judgment of C. P. Westmoreland Co., Aug. T., 1918, No. 461, on verdict for defendants, in case of Cora Gertrude Kiebler v. Mary C. McCutcheon and Martha Ludwick. Reversed.

Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Petition in the orphans' court for reappraisement of real estate. Before COPELAND, P. J.

Issue to try title to real estate in common pleas. Before COPELAND, P. J.

The opinion of the Supreme Court states the facts.

See also Ludwick's Estate, 255 Pa. 551.

In the orphans' court the petition was dismissed. Petitioner appealed.

In the common pleas a verdict was rendered for defendants on which judgment was entered. Plaintiff appealed.

*Errors assigned* in the respective proceedings were, inter alia, decree dismissing petition, and order discharging rule for judgment n. o. v., quoting record.

*H. H. Fisher,* with him *W. C. Peoples,* for appellant, cited, as to the character and incidents of the devise to the son, quantum of his estate and title of the son's heir: Hart v. Homiller, 20 Pa. 248; Hamilton v. Porter, 63 Pa. 332; Hanna's App., 31 Pa. 53; Blackwell v. Scouten, 199 Pa. 446.

As to presumption of acceptance: Darlington v. Darlington, 160 Pa. 65; Tarr v. Robinson, 158 Pa. 60; Heilig v. Heilig, 28 Pa. Superior Ct. 396; Bryce's Est., 194 Pa. 135; Smith v. Bank of Washington, 5 S. & R. 318; Allen v. McMasters, 3 Watts 181; Sourwine v. Claypool, 138 Pa. 126.

As to appraised value, and charge on land: Baker's App., 59 Pa. 313; Gilbert's App., 85 Pa. 347; Weiler's Est., 169 Pa. 66; Knecht's App., 71 Pa. 333.

As to whether right to refuse land at appraisement descends to heir of one who has right: Walton v. Wallis, 1 Dallas 351; Hersha v. Brenneman, 6 S. & R. 2; Ragan's Est., 7 Watts 438; Eshleman's App., 74 Pa. 42; Overfield v. Christie, 7 S. & R. 173; Duncan v. Walker, 2 Dallas 205; Van Rensselaer v. Dunkin, 24 Pa. 252.

*Paul H. Gaither* and *Charles E. Whitten,* with them *H. H. Dinsmore* and *R. Kirk McConnell,* for appellee.— Appellant is estopped from now insisting upon an appraisement of the real estate in its entirety: Phila. & Reading Coal & Iron Co. v. Schmidt, 254 Pa. 351; Paine v. Bank, 194 Pa. 403.

The option to take at the appraisement descended to Cora G. Keibler, heir of William Ludwick: Ragan's Est., 7 Watts 438.

OPINION BY MR. JUSTICE SIMPSON, February 14, 1921:

Jacob Ludwick died March 13, 1914, leaving to survive him one son and four daughters, named in the following paragraph of his will, which was duly probated: "3d. I will and devise that my administrator shall appoint three disinterested men, who shall, under oath, value and appraise my real estate, that is the farm on which I now reside, and it is my will that my son William Ludwick shall take my real estate at said appraisement. But if William should refuse to take my real estate at said appraisement, then my daughters Mary C. McCutcheon, Martha Ludwick, Matilda Anderson and Su-

sana Duer, are to have the privilege of taking my real estate at said appraisement, according to their seniority of age; and if none of my heirs should agree to take my real estate, then I order that my administrator shall put it to sale."

In accordance with the foregoing direction the administrator appointed appraisers who valued the farm, exclusive of the coal and mining rights therein and thereunder—as to which latter there was an outstanding option of purchase given by testator—at the sum of $3,600. Testator's son, William, was then very ill, so much so that appellant avers in her paper-book in this court, and appellees admit in theirs, "that for a week or ten days prior to his death, William Ludwick was physically and mentally incapable of transacting any business." There were but five days between the time of the appraisement and the date of his death, and his condition during this period probably explains why he was not asked to and never did accept or refuse the farm at the valuation. He died intestate, leaving a wife and one daughter to survive him, and thereupon a dispute arose between the daughter and her two aunts, Mary and Martha, she claiming that as her father had not refused to accept the property, it must be presumed he did accept it, and, in any event, she had acquired, by devolution, his right of election; and they claimed the right was theirs because he had not elected to take the farm. The matter remained for some time in what may be termed the stage of discussion, but, evidently tiring of this, the aunts, who were in possession, presented a petition under the Act of June 10, 1893, P. L. 415, upon which a rule was granted on their two sisters and William's daughter, "to show cause why an issue should not be framed......between the parties to settle and determine their respective rights and title in and to the said land." The sisters disclaimed all desire to take the property at the appraisement, and the daughter not answering, an issue was awarded as prayed for, in which she

was made plaintiff and petitioners were made defendants.

At the trial the court below instructed a verdict in favor of defendants, but suggested to plaintiff that if she thought the appraisement was improper because it did not include a valuation of the underlying coal—the option regarding which had expired between the date of the appraisement and the time of trial—she could apply to the orphans' court to set it aside and require a new appraisement to be made. This she did; but her application was dismissed for reasons not necessary to recite, and from this order the first appeal under consideration was taken. At the same time the court of common pleas dismissed her motions for a new trial and for judgment non obstante veredicto, judgment was entered on the verdict, and therefrom the second appeal was taken.

It will be noticed that the vital question to be decided is, who, if either of the parties, has the right to take the property at the appraisement. We are of opinion that under the foregoing facts neither has the right, but that a contingency has arisen for which testator did not provide.

If the will had simply given the farm to William, charged with the appraised value thereof, of course he would, upon acceptance, have acquired a fee simple title thereto, subject to the charge: Hart v. Homiller, 20 Pa. 248, and 23 Pa. 39; Hanna's App., 31 Pa. 53. Here, however, William had a right to refuse to take, and the fee simple title could not vest until his decision on this point, and he never did decide. As stated by Chief Justice MARSHALL in United States v. Grundy, 3 Cranch 337, 352: "It seems to be of the very nature of a right to elect one of two things, that actual ownership is not acquired in either until it be elected." It is idle to say that a presumption arises that William did elect to take the property because it would have been to his advantage so to do; for, laying aside all other objections to this line of reasoning, the fact remains that he did not so elect,

and the alleged presumption must necessarily give way to the fact: Cohen v. Phila. Rapid Transit Co., 228 Pa. 243; Devall v. Glover, 250 Pa. 417, 420. Nor can we follow appellant in her contention that by devolution there vested in her the right of election which was given only to her father. "In case the person entitled to elect dies without having exercised the right, it is lost, and cannot be exercised by his or her personal representatives or heirs, unless the will expressly so provides": 40 Cyc. 1973. In the present instance the will does not do so. Of course the rule is different in those cases where, by statute, an estate or power given to one devolves, in case of his death, upon others designated in the act; but here there is no such statute. Section 12 of the Act of April 8, 1833, P. L. 249, applies only in cases where the parent dies before the child to whom a devise or legacy is given, and hence, even if this provision should be held to be a devise, it would not apply, since William survived his father. No other statute, of which we have knowledge, has any bearing upon this question; and none has been brought to our attention except those which relate exclusively to proceedings in partition, and they, of course, have no relevancy here.

. Nor can we accept appellees' contention that testator meant they should have the right to take if William failed so to do. His language is that they should have the right only in case William "should refuse," and he did not refuse. Indeed, a strict construction of the language used would sustain appellant's contention rather than theirs, for testator says: "It is my will that my son William Ludwick shall take my real estate at said appraisement," language absolute in form, as testator the owner of the farm had the right to make it; and is only qualified by the succeeding clause, in case "William should refuse to take" it, and he never did refuse. For the reasons stated above, however, this does not conclude the matter in favor of appellant, but it certainly excludes appellees' contention. Nor are they

aided by the later clause "if none of my heirs should agree to take my real estate then I order that my admin- istrator shall put it to sale," for this clause relates to the administrator's duty and not to the right of either the son or the daughters. If it would be meaningless unless applied in aid of the construction contended for by one or the other of the parties, we would, of course, be re- quired to so construe it, in accordance with the rule that every word in a will must be given effect if it is reasonably possible so to do; but we are not compelled to take this course in the present instance, for admit- tedly William did not "agree" to take, and appellees did not "agree" because the will gave them no right so to do save upon a contingency which never arose; and hence as "none of [his] heirs [did] agree to take," full effect can be given to the clause directing the administrator to sell.

We conclude, therefore, as already stated, that a situ- ation has arisen which testator did not contemplate, and for which he did not provide. Doubtless like most par- ents he supposed his son would survive him, and would be competent to and would in fact accept or refuse. That William would be incompetent to "refuse," prob- ably never occurred to testator, certainly he did not pro- vide for it. We might guess as to his intent, but, no mat- ter which way we conclude, we would do violence to the language actually used, and this we are not permit- ted to do, since the "question in expounding a will is not what the testator meant but what is the meaning of his words": Hancock's App., 112 Pa. 532; Glenn v. Stewart, 265 Pa. 208, 211; O'Neill's Est., 266 Pa. 9.

We are of opinion, therefore, that neither appellant nor appellees have shown a right to take the property at the appraisement; and hence, for the reasons stated, the administrator should now make sale of the entire estate. This conclusion renders unnecessary a consideration of the arguments relative to the character and sufficiency of the appraisement, for, as neither can take under the

contingency which has arisen, what was included in it has become unimportant.

The decree of the orphans' court is affirmed, and the judgment of the court of common pleas is reversed and the issue granted by it is set aside; neither party to recover costs from the other.