## Munyon's Estate

The facts appear from the adjudication of

GEST, J., Auditing Judge.—James M. Munyon died on March 10, 1918, leaving a will, by the sixth paragraph of which he provided as follows: "I give and bequeath to John J. Foulkrod, Jr., Esquire, Five thousand Dollars (without deduction of collateral inheritance tax) either in cash, securities or in the capital stock of the Munyon's Homoepathic Home Remedy Company, of Pennsylvania, at par, as he shall determine, In Trust, with authority to retain the investments of which the Trust Estate shall originally or thereafter consist and to sell the same and to invest and re-invest the proceeds thereof from time to time as he shall see fit, not restricting him in any way to so-called 'legal securities' and with full power to make all transfers and assignments of securities or investments without other authorization than that herein contained. I direct the net income of the Trust Estate shall be paid to Clarence P. Wynne, during his life and so long as he may be an employee of the Munyon's Homoepathic Home Remedy Company, of Pennsylvania, without liability for his contracts, debts or engagements of every kind and without power of alienation, assignment or anticipation and I direct that the principal of the Trust, at his death, or on his ceasing to be an employee of the Company aforesaid, shall fall into and become part of the residuary estate." His residuary estate he devised and bequeathed to John J. Foulkrod, Jr., in trust for certain purposes therein mentioned, which need not be recited.

This account is filed of the award of $5000 made to the present accountant as trustee upon the adjudication of the second account of John J. Foulkrod, Jr., as executor, October 4, 1920, and is filed in order to have it judicially determined whether the trust for Clarence P. Wynne continues or not.

The facts of the case appear clearly from the testimony and were not in dispute.

Munyon, the decedent, was the sole owner of the capital stock of Munyon's Homœopathic Home Remedy Company of Pennsylvania, a corporation organized under the laws of this Commonwealth, its charter having been granted by letters patent February 15, 1892, and after its merger with the Munyon Witch Hazel Company, further letters patent were issued to Munyon's Homœopathic Home Remedy Company on August 24, 1909, its name being subsequently changed to Munyon Remedy Company on July 10, 1924, as appears by certificate of the deputy secretary of the Commonwealth hereto annexed. And as further appears by the certificate of the deputy secretary of the Commonwealth, May 2, 1932, no dissolution proceedings have been filed relative to said corporation, and, so far as the records show, the same appears to be a subsisting corporation of this Commonwealth.

Clarence P. Wynne, the cestui que trust, was vice president of the Munyon company for some years prior to the death of Munyon and acted as his confidential agent and attorney in fact. After Munyon's death in 1918, he continued as vice president and executive officer, representing Mr. Foulkrod, who was trustee of the estate. In June, 1920, Foulkrod, as executor and trustee, sold the stock of the company to a man named Casey, under whom Wynne continued as secretary and general manager until Casey sold his interest in 1923, when Wynne became president of the company for the syndicate formed by the new owners, and during this period Wynne received a salary. In April, 1929, the company went into the hands of receivers, of whom Wynne was one, and it was found necessary to sell the assets of the company, the purchaser being a man named Firestein. The assets of the company were distributed for receivers' fees and costs, the stockholders getting nothing. Firestein organized a new corporation called the Munyon Remedy Corporation, organized under the laws of New York. Subsequently, the new corporation discharged Wynne, and since that time, about June 6 or 13, 1931, Wynne has had no connection with that business. The charter of the Munyon's Homœopathic Home Remedy Company or the Munyon Remedy Company has never been revoked, but it has no assets and, so far as appears, transacts no business.

The question here raised is one of testamentary construction. Counsel for Clarence P. Wynne argued that the bequest in his favor was for life, with a condition subsequent in case he ceased to be an employee of the Munyon company, which condition should not be enforced against him; and, secondly, that the cessation of Mr. Wynne's employment was intended to depend upon Mr. Wynne's voluntary act.

It seems to me to be clear in the first place that the gift was not coupled with a condition subsequent, but was limited in time to Mr. Wynne's life, so long as he continued in the employ of the company, that is, the words used merely impose an added restriction upon the period of time during which the beneficiary shall receive the income.

Now it can scarcely be questioned that after the receivers' sale, and certainly after the discharge of Wynne by the purchasers from their employment, Wynne ceased to be an employee of the company. Employment involves the performance of some work or duty, and here there is none. It is urged, however, on this second point of the case, that the testator contemplated and intended only the cessation of Wynne's employment by his voluntarily leaving the employ of the company. In my opinion, this would be too broad a construction. Let us suppose that the Munyon company had continued in full operation and that Wynne had failed in the performance of his duty; it cannot be questioned that the company would have the right to discharge him, and in such case his beneficial interest as cestui que trust would cease. That,

of course, is not the case here, for the employment ceased because the company became practically nonexistent, but the result is the same. Doubtless the facts that have occurred were not contemplated by the testator, and, as so often happens, the temptation is to inquire what we may suppose the testator would have provided had the unforeseen contingency been present in his mind. This, however, is a very dangerous doctrine, as it would substitute for the language of the will a mere guess concerning an undisclosed desire of the testator, his possible but unexpressed intent. Ludwick's Estate, 269 Pa. 365, is a recent case upon the point, and there are many others.

I cannot overcome the plain wording of the will that "the principal of the Trust, at his death, or on his ceasing to be an employee of the Company aforesaid, shall fall into and become part of the residuary estate."

I am, therefore, of opinion that Clarence P. Wynne was entitled to receive the income only so long as he was in the employ of the company, and giving to this its utmost liberality of construction, until June, 1931.

*C. Russell Phillips*, for exceptant; *Walter Lee Sheppard*, contra.

LAMORELLE, P. J., July 1, 1932.—The reasoning of the auditing judge in his interpretation of the will is so clearly correct that, notwithstanding the excellent presentation on the part of the exceptant, we cannot interpret the clause of the will "and so long as he may be an employee" as a condition subsequent.

The income of a trust fund was given to an individual "during his life and so long as he may be an employee of" a named corporation. If there were any doubt at all that when he ceased to be an employee the annuity ceased, that is met by a later clause relating to the principal of the trust, which provides that such principal at the death of the annuitant, or on his ceasing to be an employee of the company aforesaid, shall fall into and become part of the residuary estate. The entire trust is included in one item of the will. The different clauses are not contradictory, but rather explanatory, and as the company is out of business, it cannot seriously be argued that the man remains an employee where there is no employer.

In the circumstances, we dismiss all exceptions and confirm the adjudication absolutely.

SINKLER, J., did not sit.