Siegel Estate.

Argued March 8, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*George I. Puhak*, with him *Andrew I. Puhak*, for appellant.

*John H. Hersker*, for appellee.

OPINION BY WRIGHT, J., July 21, 1955:

On May 24, 1951, Charles C. Siegel entered into a written lease agreement with Walter E. Hess and Clarence Hess by virtue of which Siegel leased for a period of five years the "northerly portion of lot No. 10, Square 28, on the map or plot of West Hazelton Borough, with 40 feet front on Broad Street and extending southwardly of that same width a distance 60 feet along Third Street". The lease agreement further provided: "The Lessor hereby agrees to sell and convey the land herein described by good and suffi-

cient warranty deed for the sum of Five Thousand ($5000.00) Dollars, free and clear of all encumbrances upon option exercised at any time but not later than ninety (90) days prior to expiration of this lease". Four days later, on May 28, 1951, Siegel made his last will and testament. By the eleventh paragraph thereof, he provided: "I hereby order and direct that my stepdaughter, Mabel Huttenstein Zillig, shall have the right or privilege to live in my home at 15 South Third Street for a period of one year from my death at a monthly rental of Forty-five dollars payable to my estate, further giving her the first option or right of purchase of the real estate lot situated in the Borough of West Hazelton at the corner of Broad and Third Streets, being a lot of the dimensions of forty feet by one hundred fifty feet, together with my single dwelling situated thereon and known as 15 South Third Street, under and subject to certain leasehold rights and option granted to Hess Bros. existing at the date of this will to the northerly portion of said lot of the dimensions of forty feet by sixty feet, at an appraised value to be determined by two real estate brokers or agents to be selected by my Executor, upon the condition that she accepts or rejects such right or option at the price fixed on or before one year of the date of my decease".

Siegel died January 13, 1952. On May 24, 1952, at the request of the executor, two qualified real estate brokers appraised the real estate at $10,700.00. In arriving at this figure the appraisers valued the ground leased to Hess Brothers at $3000.00, the remaining ground at $2000.00, and the dwelling house at $5700.00. On August 28, 1952, Mrs. Zillig notified the executor of her desire to exercise her right to purchase the realty under paragraph eleven of the will at the appraised value of $10,700.00. The executor

refused to transfer title to the premises. On November 7, 1952, Mrs. Zillig petitioned the Orphans' Court for a citation directing the executor to show cause why he should not tender to her a deed for the whole lot upon tender by her of $10,700.00. An answer was filed to this petition. On December 5, 1952, Hess Brothers notified the executor of their intention to exercise the option contained in the lease. On April 8, 1953, after hearing upon petition and answer, the Court made an order dismissing the petition insofar as the northerly portion of the lot was concerned and directing the executor to convey the remainder of the lot upon payment of the sum of $7700.00. Mrs. Zillig filed timely exceptions to this order, alleging in substance that she was entitled to the difference between the price of $5000.00 paid by Hess Brothers and the appraised value of $3000.00. These exceptions were considered at audit on December 13, 1953, upon the assumption that Mrs. Zillig had a claim against the estate for the difference of $2000.00. On said date the Court dismissed the exceptions. This appeal followed.

Relying upon *Kerr v. Day,* 14 Pa. 112, the lower Court reasoned "that where a lease agreement gives to the lessee a right or option to purchase the leased premises, the realty is regarded as having been converted to personalty as of the date of the lease agreement, notwithstanding that an election to complete the purchase lies entirely with the lessee . . . and that if the seller dies before the exercise of the option by the lessee, the money, when paid, upon the exercise of the option, will go to the lessor's or vendor's executor as personal assets". The conclusion was reached "that Mrs. Zillig's first option or right to purchase under paragraph Eleventh of the will covered only that portion of decedent's realty not leased to Hess Brothers".

It is our view, however, that the rule followed by the lower Court cannot be applied in the present case.

It should be noted that Charles C. Siegel did not devise the lot in question to appellant. Instead, by paragraph eleven of his will he gave her "the first option or right of purchase" of the real estate, under and subject to the leasehold interest of Hess Brothers and the option contained in the lease. In the event of Mrs. Zillig's failure to exercise her right, the same paragraph contains further provisions for the sale of the real estate.[1] A somewhat similar situation was considered in *Ludwick's Estate,* 269 Pa. 365, 112 A. 543. There the testator gave his son the privilege of taking a farm at the appraised value. There was no outright devise. The son died before electing. Mr. Justice SIMPSON said: "Here, however, William had a right to refuse to take, and the fee simple title could not vest until his decision on this point, and he never did decide". In commenting on this case in *Horn's Estate*, 351 Pa. 131, 40 A. 2d 471, Mr. Justice STEARNE said: "Such a testamentary provision, in essence, was an option to purchase. The death of the son before electing resulted in a termination of the testamentary option".

A conveyance of land as to a portion of which there is an outstanding option of purchase imposes upon the

---

[1] "In the event of her failure to exercise such right or option within one year from my decease, then my Executor shall receive sealed bids from any or all of my named children or step-children so inclined to bid on a day or date and time set by him for the convenience of all, with written notice to each of my said children or step-children, at least thirty (30) days prior to the date set for such sale. In the event that no bids are offered by my said children or step-children on the date set, my Executor shall have the right and power to sell, and shall sell, the said real estate to the highest bidder, and the net proceeds therefrom are to be distributed under the residuary clause of this, my last will and testament, to the parties therein named in a paragraph following".

grantee the duty to convey, as well as gives him the right to receive the proceeds, if and when the option is exercised. As we interpret the will of Charles C. Siegel it was his intention to effect such a result. He described the real estate in its entirety as a lot forty by one hundred fifty feet in size. He then provided that appellant's first right of purchase should be subject to the outstanding lease and option concerning a portion thereof. Our conclusion is that appellant received the potential right to acquire title to the whole lot, subject to the option insofar as the leased portion was concerned. Having given notice of her intention to purchase, appellant was entitled to receive, or be credited with, the proceeds paid by Hess Brothers upon the exercise of their rights under the option.

The order of the Court below is reversed, and the record is remanded for the entry of an appropriate decree of distribution.