## McCredy Estate

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Charles F. Nahill*, for Commonwealth, exceptant.

*Dechert, Price & Rhoads* and *Herbert S. Riband, Jr.*, contra.

*Hart, Childs, Hepburn, Ross & Putnam*, for accountants.

### ADJUDICATION

SHOYER, J., July 14, 1966.—Decedent, Frances R. McCredy, died December 26, 1964, not survived by a spouse, leaving a will dated June 24, 1954, . . .

Item six (c) provides:

"(c) So long as said three individual [residuary] beneficiaries shall live said Trust and the income therefrom shall be held in spendthrift trust to the fullest extent permitted by law, and the income therefrom shall not be liable for any debts, contracts, engagements, assignments, alienations or anticipation of any one of said three individual beneficiaries, nor subject to execution, attachment, sequestration or any other legal or equitable process therefor".

The major question requiring adjudication arises out of the written renunciation dated February 9, 1965, by Charles V. Swain, executor of the estate of John F.

Ruckman, deceased, of all his interest in the income of the residuary trust that would have accrued from the date of decedent's death on December 26, 1964, to the date of death of John F. Ruckman on January 27, 1965.

The accountants estimate that if the renunciation executed by the personal representative is valid, it will reduce the Federal estate tax liability by approximately $404,000. Pennsylvania inheritance tax of 15 percent on approximately $7,500 of income will also be saved the estate.

Accordingly, pursuant to section 707 of the Orphans' Court Act of August 10, 1951, P. L. 1163, as amended August 13, 1963, P. L. 670, 20 PS §2080.707 (see Brinton Estate, 36 D. & C. 2d 679, 15 Fiduc. Rep. 244 (1965)), upon petition filed on behalf of the accountants, by decree dated February 15, 1966, a citation was awarded, directed to the United States Attorney and the Attorney General of the Commonwealth, to show cause why the appropriate officers of the United States of America and of the Commonwealth of Pennsylvania should not be authorized to appear as parties in interest at the audit of this account. The return day of the citation having passed and no answers having been filed, this court, by decree dated March 10, 1966, authorized the proper officers of the Federal and State Governments to appear as parties in interest.

At the continued audit hearing held April 27, 1966, counsel for the accountants stated that the Assistant United States Attorney had informed him that the Federal Government did not intend to appear or participate in these proceedings.

The notice to the Attorney General of the Commonwealth as parens patriae of gifts to charities and the clearance certificate required under Philadelphia Orphans' Court Rule *55 were submitted and are hereto annexed.

Counsel for the accountants submitted an affidavit

executed April 21, 1966, by Charles V. Swain, executor under the will of John F. Ruckman, deceased. The affidavit avers, inter alia, that letters testamentary on the estate of John F. Ruckman were granted affiant by the Register of Wills of Bucks County on February 2, 1965, and the first complete advertisement of the grant of letters appeared February 11, 1965; that all known debts of John F. Ruckman, deceased, have been paid; that, within the discount period, Pennsylvania inheritance tax was paid in the amount of $161,500; that the Federal estate tax return will be filed before April 27, 1966, and the tax thereon paid in full; that the estate of John F. Ruckman is amply solvent, having a gross value in excess of $1,200,000, and all pre-residuary gifts satisfied or provided for, and that Charles V. Swain is the sole residuary legatee under John F. Ruckman's will, and "is therefore the only party affected by the disclaimer of February 9, 1965". There being no objection, this affidavit and a copy of the Ruckman will, certified by the Register of Wills of Bucks County, were admitted into evidence.

I find as a fact: (1) that none of the income from decedent's estate was paid to John F. Ruckman or to his personal representative; (2) that John F. Ruckman died January 27, 1965, 32 days after the death of decedent; (3) that letters testamentary on the estate of John F. Ruckman, deceased, were granted by the Register of Wills of Bucks County, Pa., to Charles V. Swain, executor, on February 2, 1965; (4) that on February 9, 1965, Charles V. Swain, executor and sole residuary legatee of John F. Ruckman, "irrevocably renounced" in writing on behalf of the estate of John F. Ruckman, deceased, and as beneficiary, all income from the estate of Frances R. McCredy, deceased; (5) that on the same day, to wit, February 9, 1965, said written renunciation was filed with the executors herein.

The Village Improvement Association, entitled to the residuary income, in argument and brief submitted by its counsel, urges that John F. Ruckman had the power to renounce the gift of income to him and upon his death that right to renounce the gift passed to his personal representative, who exercised the right within a reasonable time.

Counsel for the Commonwealth has advised the auditing judge that after an exhaustive but unsuccessful search through the digest of the National Reporter system, he is convinced that this is a case of first impression in Pennsylvania and elsewhere. Authorities involving renunciation by the personal representative of a surviving spouse in the estate of the first spouse were noted in Illinois and New Jersey.

Section 103 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.103, provides that "Legal title to all personal estate of a decedent shall pass at his death to his personal representative, if any, as of the date of his death". However, as was held in Bute Estate, 355 Pa. 170 (1946), no person can be compelled to accept a testamentary gift, and an heir's disclaimer of the gift prevents it from vesting in him and frees him from liability for inheritance tax thereon.

Section 502 of the Fiduciaries Act, entitled "Renunciation of Right to Administer Property", provides that "When any property is of no value to the estate, the court may authorize the personal representative to renounce his right to administer it".

The Joint State Government Commission's Comment to section 502 states: "This section is *consistent with existing law*, under which a fiduciary is not required to exercise his right to administer estate property when *in his reasonable judgment it is inadvisable* to do so. Cf. Reynolds v. Cridge, 131 Pa. 189; Pearlman Trust, 348 Pa. 488. This section should prove helpful to personal representatives and to the estate when the personal representative hesitates about assuming the risk

that his judgment to abandon property for estate purposes may prove to have been in error. When the personal representative's right to administer is renounced, *full legal and equitable title will be in those beneficially interested in the asset, subject of course, to their right to disclaim.* Cf. Roop v. Greenfield, 352 Pa. 232". (Italics supplied).

Moreover, counsel for the Village Improvement Association points to section 523 of the Fiduciaries Act which expressly provides that: "Except as otherwise provided in this act, nothing in this act shall be construed to limit the inherent powers and duties of a personal representative".

The terms "renunciation" and "disclaimer" are synonymous. Webster defines disclaimer as the "Act of disclaiming; a denial or disavowal of claim". "Renunciation" is the "Act or an instance of renouncing, or giving up, sacrificing, rejecting, repudiating, etc.", "Syn: Disavowal, disclaimer", etc. Bregy, in Intestate Wills and Estates Act of 1947, page 5220 et seq., refers to renunciation as the *refusal* to accept a testamentary gift, to be distinguished from release which involves the transfer of a previously accepted benefit.

In Grote Trust, 390 Pa. 261 (1957), our Supreme Court distinguished between a beneficiary's right to disclaim a benefit before it is accepted and the release or assignment of the benefit once it has been accepted. The court stated, pages 279-80:

"Bute Estate merely holds that no person may be compelled to accept a gift against his will, if he has never accepted the gift. A person does not have to accept a gift or legacy (whether outright or in trust); *but all the authorities hold that he has to refuse or renounce or disclaim a gift of spendthrift trust income within a reasonable time after his right accrues and before he receives any income thereunder. . . ."* (Italics supplied).

To be effective, it is clear that the disclaimer must be

made promptly, within a reasonable time after the right has accrued. In Brinton Estate, supra, decedent died December 11, 1962, and the life tenant disclaimed all right to invade principal on March 29, 1963. This court held the disclaimer to have been made within a reasonable time, no principal having theretofore been applied for the benefit of the life tenant.

In the instant matter, the renunciation was filed 45 days after testatrix's death. No income had been paid to the life tenant or to the disclaimant. We are told by counsel that, although the life tenant survived testatrix by 32 days, he was confined to the hospital for the last two weeks of his life. Also, it should be noted that the will and codicil in item five (b) direct that the income be paid "in quarterly installments" so that the *first quarterly installment of income,* if any, was not payable until March 26, 1965. Until then, the life tenant could have no control or possession of the income, and any demand by him for immediate payment would have been premature and nugatory.

In view of the foregoing, I find as a fact (6) that the renunciation was filed within a reasonable time.

The question as to the power of the personal representative to validly disclaim must now be answered. Counsel for the hospital contend that the *right to disclaim* a testamentary gift is a *proprietary right* which passed to the personal representative and not a personal right which died with the life tenant. They cite as among the purely *personal* rights a surviving spouse's statutory right of election (Crozier's Appeal, 90 Pa. 384 (1879); Strecker Estate, 20 D. & C. 2d 652, 10 Fiduc. Rep. 382 (1960)); the statutory family exemption (Bell's Estate, 139 Pa. Superior Ct. 11 (1939)); the testamentary right given by will to testator's son to elect to take certain real estate at the appraised value: Ludwick's Estate, 269 Pa. 365 (1921).

Page on Wills, Bowe-Parker Revision, §49.5 (1962

ed.), states the rule that "Unless a contrary intention is indicated by the provisions of the will, the right of acceptance or renunciation is not ended by the death of the devisee or legatee who had such right. Such right may be exercised by his executor or administrator. As in the exercise of his other powers, the executor or administrator must act for the best interests of the estate as a whole and not for his own interests or for those of others".

In re Howe, 112 N. J. Eq. 17, 163 Atl. 234 (1932), is cited by the authors in support of the text. In that case, a husband and wife were killed as the result of an automobile accident. The wife survived her husband by three days without regaining consciousness. Each will left the spouse's estate to the survivor. Four months and 10 days after the wife's death, her administratrix executed a disclaimer of the right to receive the husband's estate in order to prevent a double New Jersey inheritance tax on the property passing from husband to wife and to their minor daughter who was the intestate heir.

After rejecting the New Jersey Tax Commissioner's argument that the wife must in law be presumed to have accepted the provisions of her husband's will for her benefit, the court went on to say, page 22:

"It is obviously much more rational to hold that where a donee, having a right of election such as in the case at bar, has had no opportunity to exercise that right, the right may be exercised on the donee's behalf by the donee's executor, administrator, or guardian, as the case may be, with the requirement, of course, that the fiduciary must exercise that right in accordance with his honest judgment as to what is best for the benefit of the person in whose shoes he stands. Should he do otherwise he would of course be guilty of a breach of trust and incur personal liability to those injured thereby".

However, in the Howe case, the court held that the delay was unreasonable, as a result of which, acceptance of the unencumbered gift of some $50,000 from the father's net estate *must be presumed.* Thereafter, equity could not approve a *revocation* of the *presumed acceptance* which was sought not in the interest of the mother's estate, but solely for the benefit of a minor beneficiary of that estate.

The Commonwealth denies the validity of Mr. Swain's disclaimer, because (1) his decedent could not have made a valid disclaimer of his right to the spendthrift income while alive, and (2) his executor cannot now do for his estate that which the income beneficiary was unable to do personally in his lifetime.

The Commonwealth cites Andrykowski v. Theis, 40 Ill. App. 2d 182, 189 N. E. 2d 3 (1963), and Rock Island Bank & Trust Co. v. First National Bank of Rock Island, 26 Ill. 2d 47, 185 N. E. 2d 890 (1962), decisions by the courts of Illinois in opposition to the New Jersey case of In re Howe, supra. It is apparent, however, that the Illinois statute on wills speaks of "renunciation" by a surviving spouse as synonymous with the "right of election" reserved under section 8 of our Wills Act of April 24, 1947, P. L. 89. Thus, the Illinois courts are in accord with our decisions holding such right of election to be a personal, nonsurviving right. The cited Illinois cases are not authority for any meaning of the word "renunciation" extended beyond the familiar Pennsylvania right of election by a surviving spouse.

It is contended on behalf of the Commonwealth that section 3 of the Estates Act of April 24, 1947, P. L. 100, as amended February 17, 1956, P. L. 1073, 20 PS §301.3, authorizes the disclaimer of income of a spendthrift trust only if the disclaimed income will pass to the intended beneficiaries' descendants. Counsel cites Borsch Estate, 362 Pa. 581 (1949) ; Close Estate, 83

D. & C. 136; Matthew's Trust, 28 D. & C. 2d 416, 12 Fiduc. Rep. 653. However, the statute is here inapplicable, since the life estate terminated with the death of the life tenant. The spendthrift provision does not extend to the life tenant's personal representative.

As pointed out by counsel for The Village Improvement Association, the right of an income beneficiary to renounce a spendthrift trust comes from the common law and does not depend on statute. The right of a legatee to renounce a testamentary remainder subject to a 10 percent inheritance tax so that the legacy could go to his wife at two percent, was upheld by our Supreme Court in Bute Estate, supra. This holding was expressly approved in Borsch Estate, supra, page 585 and also in Grote Trust, supra, at page 279, where Bute Estate was endorsed as "sound law". The intimation in Borsch (page 589) and in Grote (page 273, footnote) that a renunciation by a life beneficiary may be later repudiated and is, therefore, not final, suggests some confusion with the situation where a release is attempted after benefits were originally accepted, or there is a belated renunciation not made within a reasonable time. Often the picture presented to the court is clouded by the threatened acceleration of contingent interests looming in the background. Mr. Bregy, in taking note of this judicial uncertainty, has cogently observed: "Acceptance is a necessary element of a gift and it would be rather extraordinary to hold that a gift must be accepted (or that a disclaimer of it could thereafter be repudiated—which would amount to the same thing) merely because there *would be* a spendthrift restriction attached to it *if* it were accepted": Bregy, op. cit. supra, pages 8107-08 (supp., 1966).

While our Supreme Court has not yet been presented with the clear-cut factual situation of a timely renunciation by the life tenant of a spendthrift trust, we may, with assurance, take the general rule from Re-

statement, Trusts 2d §36, comment *"c. Disclaimer by beneficiary.* If the beneficiary of a trust has not by words or conduct manifested his acceptance of the beneficial interest, he may disclaim. His disclaimer terminates the trust in his favor. The disclaimer has a retroactive effect so as to free the beneficiary of any liability as beneficiary.

"Although the beneficiary of a spendthrift trust who has accepted the interest under the trust cannot release his interest, he can, if he has not accepted the interest, disclaim it".

Certainly, the right which accrues to the life tenant's executor comes without any strings attached. It is not required that the income be paid into the hands of the beneficiary, or upon his sole personal receipt, and the restriction expressly endures only "so long as [he] shall live". The legal title which passes to the personal representative comes to him shorn of all spendthrift provisions and the asset is freely available for the deceased life tenant's creditors, if any: Fiduciaries Act of 1949, sec. 103, supra. The right of the personal representative to accept or reject is a proprietary right subject only to the approval of the court having jurisdiction over the estate which he is administering. Here, we are satisfied that there can be no justifiable cause for complaint in administration of the Ruckman estate, for we have proof that the estate is amply solvent and the executor is the sole residuary legatee. Should Mr. Swain be called upon in the Bucks County Orphans' Court to justify his fiduciary's act of disclaimer, a request which we deem most unlikely, he may sustain his act as an exercise of "his reasonable judgment", in keeping with the suggestion of the commission in their comment to section 502, supra.

While the motive for the present renunciation is admittedly tax saving, or tax avoidance, if you will, Bute Estate is compelling authority that such motivation

will not taint or invalidate the renunciation. Indeed, it would be a most obnoxious corollary to the donee's freedom of choice to require the acceptance of a gift solely for the purpose of creating a taxable event.

I accordingly find that the disclaimer by Charles V. Swain, executor and sole residuary legatee under the will of John F. Ruckman, deceased, is valid and proper.

And now, July 14, 1966, the account is confirmed nisi.

### OPINION SUR EXCEPTIONS TO ADJUDICATION

LEFEVER, J., June 9, 1967.—May the executor and sole residuary beneficiary of the estate of a deceased life beneficiary of a testamentary spendthrift trust disclaim the income which accrued during the 32 days' interval between the deaths of testatrix and the life beneficiary? This is the question of first instance raised by the exceptions before the court.

In a scholarly, comprehensive adjudication, the learned auditing judge has ably stated the facts in this estate and the reasons supporting his conclusion that the disclaimer of accrued income, filed by Charles V. Swain, executor and residuary beneficiary of the estate of life beneficiary, John F. Ruckman, deceased, was binding and effective. We concur in, and adopt, that adjudication.

When this matter was first argued before this court, we entertained some doubt as to whether we should rule on these exceptions until and unless an adjudication was filed in the estate of the deceased beneficiary. This problem was resolved at the reargument by the filing of a stipulation of counsel for all interested parties, stating that an adjudication had been filed on May 3, 1967, by President Judge Satterthwaite, of the Orphans Court of Bucks County, in the Estate of John F. Ruckman, Deceased, no. 38789, and that that adjudication is now absolute. The certified copy thereof discloses that Judge Satterthwaite ruled, inter alia:

"It thus, appears, and it is hereby finally ascertained, that there are no unpaid claimants or creditors other than (possibly) the Commonwealth of Pennsylvania and (possibly) the United States of America for (possible) additional death taxes; that accountant individually is the sole party beneficially interested in the within estate as residuary legatee . . ."

The adjudication awards the residue to Charles V. Swain, absolutely.

This final adjudication now takes the place of the affidavit of Charles V. Swain upon which the auditing judge relied. It is proof that there are no unpaid creditors in the Ruckman estate; that Swain is the sole residuary legatee under Ruckman's will and the only party affected by the disclaimer; and that no one was injured by the disclaimer. Hence, the instant case is distinguishable from Ball Trust (No. 2), 41 D. & C. 2d 527, where the administration was still in process and the claims of creditors and legatees had not been finally determined. The law does not require a person to do a vain thing nor follow a useless or needless procedure (Plogstert Estate, 350 Pa. 474) ; nor does it prevent a beneficiary from renouncing his legacy merely to create a taxable event: Bute Estate, 355 Pa. 170. This principle should apply equally to the disclaimer by the executor of the life beneficiary's estate, since no creditors, legatees or devisees are harmed thereby.

Exceptant contends that the executor's interest in the accrued income was personal rather than proprietary and, hence, he had no right to make the disclaimer. We agree with the learned auditing judge that the right was a proprietary one and that In re Howe, 112 N. J. Eq. 17, is applicable.

The right and duty of a fiduciary to make claim to assets payable to the estate he was administering was the issue in Harris Estate, 351 Pa. 368. There, the majority upheld the decision of the lower court in refusing

to permit the guardian of the incompetent wife to elect to take against her wealthy husband's will on the ground that (page 385):

"The primary consideration is the current welfare of the incompetent herself, and the court's discretion in the matter must be so exercised as to serve that purpose. Of course, if it were necessary, in order to assure the incompetent of sufficient income adequately to care for her, to elect to take against her husband's will, the court would so direct, notwithstanding that as a consequence thereof some benefit would accrue to her next of kin on her death. However, if adequate provision for the incompetent is made either by the will or there are other sources of assured income for the incompetent, the court may not properly direct the guardian to take against the will, which would result in diverting a part of the principal estate to strangers of the blood of the testator".

The three dissenters strongly disagreed with the conclusion of the majority that the guardian should not have been directed by the court to elect to take against the will on the ground that, under the actual facts of the case, the widow was financially harmed thereby. In any event, the "current welfare of the incompetent" was the primary objective.

In the instant case, Swain, the executor, is fully competent and sui juris; he voluntarily disclaimed; and, as stated supra, no creditors or others either in the instant estate or the Ruckman estate were harmed by this disclaimer. The Commonwealth should not be permitted to set this disclaimer aside solely for the purpose of creating a taxable event.

We are fortified in this conclusion by sections 406 and 102(15) of the Inheritance and Estate Tax Act of June 15, 1961, P. L. 373. The relevant portions thereof provide:

"Section 406. Renunciation of Transfer.—When any

person entitled to a distributive share of an estate, whether under an inter vivos trust, a will, or the intestate law, renounces his right to receive the distributive share within three (3) months after the grant of letters, or within one (1) year after the death of the decedent, whichever first occurs, receiving therefor no consideration, the tax shall be computed as though the persons who benefit by such renunciation were originally designated to be the distributees, conditioned upon an adjudication or decree of distribution expressly confirming distribution to such distributees. Notice of the filing of the account and of its call for audit or confirmation shall include notice to the Department of Revenue. . . .

"Section 102(15). 'Person' includes a corporation, association, partnership and society (whether or not operated for profit) as well as a natural person, and includes such entities, whether or not acting in a fiduciary capacity".

The disclaimer by the executor of Ruckman's estate meets the stated requirements of the statute because: (1) The terms "renunciation" and "disclaimer" are synonymous and distinguishable from "release" and "assignment" (Bregy, Intestate Wills and Estates Act of 1947, page 5220 et seq.) ; (2) the executor of the life tenant's estate was a "person" within the quoted definition in the act; (3) the disclaimer was made within the specified time, viz., within one year of death and three months after the grant of letters; (4) no consideration was received for the disclaimer; (5) the adjudication expressly confirmed the distribution of the disclaimed income to the Village Improvement Association, the charitable remainderman under the will which is a "person" within the meaning of the act; and (6) the Commonwealth had due notice of the filing of the account, actually appeared at the audit and challenged the validity of the disclaimer.

We conclude, therefore, that the disclaimer filed by Charles V. Swain, executor and residuary legatee of the estate of John F. Ruckman, deceased, in the instant case was valid and binding.

Accordingly, the exceptions are dismissed and the adjudication is confirmed absolutely.